IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DON L. RUESCH, an individual; and LONEVA R. RUESCH, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> PURPLE SHOVEL, LLC, a foreign limited liability company; STRONG & HANNI, P.C., a Utah Professional Corporation; MICHAEL L. FORD, an individual; STEPTOE & JOHNSON LLP, a foreign limited liability partnership; STATEWIDE COURT & ATTORNEY SERVICES LLC d/b/a UTAH CONSTABLE SERVICES, a Utah limited liability company; JAMES EDWARD HOUGHTALEN, an individual; CHRIS WORRELL, an individual; WENDY WORRELL, an individual; DAMIAN BATES, and DOE DEFENDANTS 1-6, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER (1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO STRONG & HANNI, P.C., MICHAEL L. FORD, AND STEPTOE & JOHNSON, LLP AND (2) GRANTING DEFENDANT STEPTOE & JOHNSON, LLP'S, STRONG & HANNI, P.C.'S, AND MICHAEL L. FORD'S JOINT MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 4:18-cv-00028-DN <br><br> District Judge David Nuffer |

This dispute arises out of the service and execution of a writ of execution on Plaintiffs at their home.[1] Defendants Strong & Hanni, P.C. ("Strong & Hanni"), Michael L. Ford ("Ford"), and Steptoe & Johnson LLP ("Steptoe") (collectively, "Defendant Law Firms") had obtained a nearly $10 million judgment against third parties, Homeland Munitions ("Homeland") and Bradley McCorkle ("McCorkle"), on behalf of their client, Purple Shovel, LLC ("Purple

---

[1] Second Am. Complaint and Jury Demand ("Complaint"), docket no. 89, filed February 4, 2019.

Shovel").[2] Having received credible information that Plaintiffs were related to McCorkle and were potentially hiding judgment debtor assets, Defendants obtained a writ of execution ("Writ").[3] Unfortunately, Plaintiffs were misidentified and had no tie to the judgment debtors or their assets. While Plaintiffs admit they have not suffered any property damage, loss of property, or bodily injury, they nevertheless brought nine causes of action against the Defendant Law Firms for their role in misidentifying Plaintiffs and serving and executing the Writ.[4] Of these claims, eight remain after a previous summary judgment order.[5]

Plaintiffs seek partial summary judgment on their claims,[6] arguing that the judicial proceedings and litigation privilege does not apply to the Defendant Law Firms because they acted in bad faith in obtaining the Writ ("Plaintiffs' Motion"). The Defendant Law Firms also seek summary judgment on Plaintiffs' claims ("Defendant Law Firms' Motion").[7] They argue that the judicial proceedings and litigation privilege bars Plaintiffs' claims in their entirety.[8] The Defendant Law Firms also argue that Plaintiffs cannot establish the essential elements of their current claims.[9]

---

[2] Judgment Against Homeland Munitions, LLC, Birken Startree Holdings, Corp., Kilo Charlie, LLC, and LC Defense, LLC, ECF no. 49, in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed July 20, 2017.

[3] Application for Writ of Execution, ECF no. 95 in in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed October 3, 2017.

[4] Complaint ¶¶ 60-101.

[5] The court previously granted summary judgment on Plaintiffs' second cause of action – Violations of the Fair Debt Collection Practices Act. Memorandum Decision and Order Granting Motions for Partial Summary Judgment, docket no. 113, filed on June 24, 2019.

[6] Plaintiffs' Motion for Partial Summary Judgment as to Strong & Hanni, P.C., Michael L. Ford, and Steptoe & Johnson LLP ("Plaintiffs' Motion"), docket no. 125, filed August 15, 2019.

[7] Steptoe & Johnson's, Strong & Hanni's, and Michael L. Ford's Joint Motion for Summary Judgment ("Defendant Law Firms' Motion"), docket no. 126, filed August 15, 2019.

[8] *Id*

[9] *Id.*

Having considered the parties' briefs and relevant case law, Plaintiffs' Motion is DENIED and the Defendant Law Firms' Motion is GRANTED. The judicial proceedings and litigation privilege protects the Defendant Law Firms from liability on Plaintiffs' claims. Plaintiffs have also failed to present sufficient facts and evidence to establish the essential elements of their current claims.

**Contents**

UNDISPUTED FACTS ........................................................................................................... 3
STANDARD OF REVIEW .................................................................................................... 9
DISCUSSION ........................................................................................................................ 10
    The Judicial Proceedings and Litigation Privilege Bars Plaintiffs' Lawsuit Against the
        Defendant Law Firms in Its Entirety ................................................................ 10
        There is No Evidence that the Defendant Law Firms Obtained the Writ in Bad
        Faith .................................................................................................................. 12
    Plaintiffs Cannot Establish the Essential Elements of their Remaining Claims .............. 15
        The Abuse of Process Claim .............................................................................. 15
        The Invasion of Privacy Claim .......................................................................... 17
        The Trespass Claim ............................................................................................ 18
        The Negligence Claim ....................................................................................... 19
        The Intentional Infliction of Emotional Distress Claim .................................... 22
        The Negligent Infliction of Emotional Distress Claim ...................................... 23
        The Negligent Hiring and Supervision Claim .................................................... 24
        The Punitive Damages Claim ............................................................................. 24
ORDER .................................................................................................................................. 25

## UNDISPUTED FACTS[10]

1.      In 2016, Purple Shovel, represented by Steptoe, prevailed on a claim for breach of contract in an arbitration proceeding against Homeland and related entities (collectively, "judgment debtors").[11]

---

[10] The following Undisputed Facts are taken from the parties' briefing on both summary judgment motions. Those facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Facts are either disputed; not supported by the cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, these Undisputed Facts contain facts that are not material, but nevertheless provide a more complete background of the events and circumstances and give context to the parties' arguments.

[11] Defendant Law Firms' Motion ¶ 1 at 4; Memorandum Decision and Order, ECF no. 48 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed July 12, 2017; Judgment Against Homeland Munitions, LLC, Birken Startree Holdings, Corp., Kilo Charlie, LLC, and LC Defense, LLC.

2.    Each of the judgment debtors is an entity formed and owned by McCorkle.[12]

3.    On or around April 2017, Purple Shovel, through its lead counsel, Steptoe, retained Strong & Hanni and Ford to assist it in converting the arbitration award to a judgment and in collecting on the judgment against the judgment debtors.[13]

4.    On July 20, 2017, Purple Shovel obtained a judgment against the judgment debtors in the amount of $9,986,909.92 plus post-judgment interest.[14]

5.    At the time Purple Shovel was seeking to collect on the judgment, it was concerned that the judgment debtors and McCorkle were actively transferring and concealing assets that should have been available to apply toward the judgment.[15]

6.    Specifically, Steptoe learned that McCorkle had engaged in a pattern of moving assets between illegitimate businesses and bank accounts and using family members to hide assets.[16]

7.    The court in the underlying judgment action entered an order finding that Homeland had violated the court's prior order "prohibiting the transfer of" assets.[17]

---

[12] Defendant Law Firms' Motion ¶ 2 at 4; Exh. 1 at 63-64, 114-115, 117.

[13] Defendant Law Firms' Motion ¶ 2 at 4; Exh. 1 at 63-64, 114-115, 117; Exh. 2 at 13-14, 45-46; Exh. 3 at ¶ 4.

[14] Judgment Against Homeland Munitions, LLC, Birken Startree Holdings, Corp., Kilo Charlie, LLC, and LC Defense, LLC.

[15] Defendant Law Firms' Motion ¶ 8 at 5; Exh. 1 at 63-66, 120-121; Exh. 2 at 40, 69; Purple Shovel, LLC's Ex Parte Motion for Prejudgment Writ of Attachment and Garnishment ("Motion for Prejudgment Writ"), ECF no. 26 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed June 5, 2017.

[16] Defendant Law Firms' Motion ¶ 8 at 5; Exh. 1 at 117-122, 128-129.

[17] Prejudgment Writ of Attachment, ECF no. 38 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed June 21, 2017.

8. On September 14, 2017, as part of Purple Shovel's efforts to locate Homeland assets, Ford deposed McCorkle's father, Mark McCorkle, who admitted he had received a total of $40,000 as a personal loan payment from McCorkle through Homeland business accounts.[18]

9. Mark McCorkle's testimony increased Steptoe's awareness of the extent to which Homeland had dispersed its assets throughout various business ventures, family contacts, and bank accounts.[19]

10. In an attempt to recover on the judgment, Dorothy Brown ("Brown"), an associate attorney at Steptoe, spoke to many "former Homeland contacts and clients" and to former Homeland employees to obtain information about where McCorkle might be hiding judgment debtor assets.[20]

11. Steptoe was aware that the maiden name of McCorkle's wife, McKayl McCorkle, is "Ruesch."[21]

12. Brown received information that Homeland was moving and storing its assets in large Conex boxes – boxes which were observed at the site of Ruesch Machines, Plaintiff Don Ruesch's ("Mr. Ruesch") company.[22]

13. Brown testified that she had no reason to doubt the information connecting Mr. Ruesch and Ruesch Machines to the McCorkle's and Homeland. Brown believed that Mr. Ruesch was McCorkle's father-in-law and was likely storing Homeland assets in his home and at his company.[23]

---

[18] Defendant Law Firms' Motion ¶ 11 at 6; Exh. 1 at 118-119, 128-129, 131; Exh. 2 at 23-24.

[19] Defendant Law Firms' Motion ¶ 12 at 6; Exh. 1 at 118, 128-129.

[20] Defendant Law Firms' Motion ¶ 13 at 6-7; Exh. 1 at 27-29, 92-93, 124-125.

[21] Defendant Law Firms' Motion ¶ 16 at 7; Exh. 1 at 134.

[22] Defendant Law Firms' Motion ¶ 17 at 7; Exh. 1 at 25-27, 33-34.

[23] Defendant Law Firms' Motion ¶ 18 at 8; Exh. 1 at 17-37, 40, 102-103, 127-129, 137.

14.     The idea that McCorkle would hide Homeland assets with his father-in-law was consistent with his other actions to actively hinder creditor collection efforts, including using family members to hide assets in violation of a court order[24] and moving assets that Purple Shovel intended to seize.[25]

15.     Brown shared with Ford the information she learned about the Ruesch's relationship to the McCorkle's and the hiding of Homeland assets.[26]

16.     Based on the representations from and research by Brown, Strong & Hanni obtained a Writ to execute on any of the judgment debtors' property at the Ruesch home.[27]

17.     The Writ was prepared by the Defendant Law Firms and not by the issuing court. The Clerk of Court signed the Defendant Law Firms' proposed Writ.[28]

18.     The Writ directed Utah Constable Services to enter Plaintiffs' residence "with the assistance of the U.S. Marshals Service, and seize enough of the judgment debtor's non-exempt property" described in the Writ.[29]

19.     Ford's understanding as he prepared the Writ was "not that the U.S. Marshal was required to accompany, but that they could be assisted by the U.S. Marshal."[30]

20.     Ford did not believe the U.S. Marshals Service needed to assist in the execution of a writ, but he thought it would be "helpful."[31]

---

[24] Defendant Law Firms' Motion ¶ 19 at 8; Exh. 1 at 118-19, 128-29; Exh. 2 at 23-24.

[25] Defendant Law Firms' Motion ¶ 19 at 8; Exh. 1 at 65-68, 117-18.

[26] Defendant Law Firms' Motion ¶ 20 at 8; Exh. 1 at 126:16-127:3; Exh. 2 at 18-19.

[27] Defendant Law Firms' Motion ¶ 22 at 9; Exh. 2 at 34, 77-79.

[28] Joint Opposition of Strong & Hanni, P.C., Michael L. Ford and Steptoe & Johnson LLP to "Plaintiffs' Motion for Partial Summary Judgment as to Strong & Hanni, P.C., Michael L. Ford, and Steptoe & Johnson LLP" ("Defendant Law Firms' Joint Opposition") ¶ 2 at 4, docket no. 133, filed September 12, 2019.

[29] Plaintiffs' Motion ¶ 2 at 3.

[30] Defendant Law Firms' Joint Opposition ¶ 3 at 4.

[31] Id. ¶ 4 at 4.

21.     On the morning of October 5, 2017, Constable James Houghtalen served the Writ on Plaintiffs' residence without the assistance of the U.S. Marshal's Service.[32]

22.     After the Constable rang the doorbell and spoke with Plaintiff Loneva Ruesch ("Mrs. Ruesch"), he waited on the porch while Mrs. Ruesch went back into the house and called her husband, Mr. Ruesch, who was away on business. Mr. Ruesch called his neighbors, the Judd's, who came to the house. The local sheriff was also called, and he came to the house. The Constable then performed his search.[33]

23.     At all times, the Constable was accompanied and observed by Mrs. Ruesch.[34]

24.     The Constable did not locate any property belonging to the judgment debtors, and he did not remove any property from Plaintiffs' residence.[35]

25.     The Constable did not physically touch Mrs. Ruesch or disrupt any property.[36]

26.     The only item that was displaced during the search was when the Constable unloaded a gun that had a bullet in its chamber. However, he did not take the gun or the bullet.[37]

27.     Mrs. Ruesch felt that the Constable was "gruff" at the beginning, but thereafter was professional and businesslike.[38]

---

[32] Defendant Law Firms' Motion ¶ 25 at 9; Plaintiffs' Motion ¶ 6 at 4.

[33] Defendant Law Firms' Motion ¶ 26 at 9; Exh. 11 at 20-33, 38-39, 77-78, 84; Exh. 12 at 150, 154, 159-160.

[34] Defendant Law Firms' Motion ¶ 27 at 9; Exh. 11 at 36:19-21; Exh. 12 at 150.

[35] Defendant Law Firms' Motion ¶ 28 at 10; Exh. 11 at 35; Exh. 12 at 212; Exh. 13 at 71.

[36] Defendant Law Firms' Motion ¶ 29 at 10; Exh. 11 at 34-36; Exh. 13 at 112.

[37] Defendant Law Firms' Motion ¶ 30 at 10; Exh. 13 at 44, 46.

[38] Defendant Law Firms' Motion ¶ 31 at 10; Exh. 11 at 36.

28.     When asked to "quantify the existence of any emotional distress" resulting from the Writ, Mrs. Ruesch testified, "Just that it's still very upsetting to me. When I have to talk about it, I get upset again."[39]

29.     Mrs. Ruesch received no counseling or therapy as a result of the Writ; she received no medical attention of any kind; she did not take any prescriptions or over-the-counter medication; and she suffered no nightmares. Mrs. Ruesch also is not aware of any monetary damages suffered as a result of the Writ.[40]

30.     Mr. Ruesch was not home when the Writ was served. He testified that he did not receive medical treatment, undergo any counseling, or take any medication as a result of the Writ.[41]

31.     Mr. Ruesch testified that his stress relating to the Writ incident arises from the fact that "[l]itigation is always stressful. . . . And it's my responsibility to find a solution to it."[42] He also explained that his damages are that the Writ incident has been "a strain upon my family, strain upon my wife, strain upon me as I have to pay for the cost of this [litigation]."[43]

32.     Mrs. Ruesch explained that her only motivation in bringing this lawsuit was to send a message to the Defendant Law Firms and the Constable that they should not have served the Writ.[44]

---

[39] Defendant Law Firms' Motion ¶ 32 at 10; Exh. 11 at 46.

[40] Defendant Law Firms' Motion ¶ 33 at 10; Exh. 11 at 43-49.

[41] Defendant Law Firms' Motion ¶ 34 at 10; Exh. 13 at 66, 113-115.

[42] Defendant Law Firms' Motion ¶ 35 at 11; Exh. 13 at 116.

[43] Defendant Law Firms' Motion ¶ 35 at 11; Exh. 13 at 115.

[44] Defendant Law Firms' Motion ¶ 36 at 11; Exh. 11 at 50-51.

33.     Mrs. Ruesch acknowledged that she did not know whether the Defendant Law Firms made an honest mistake in having the Writ served on her home.[45]

34.     Likewise, Mr. Ruesch testified that he did not have any information to suggest that Brown did not believe the information or have information that it was inaccurate relating to the Writ.[46]

35.     After the Writ was served, Plaintiffs' counsel contacted McCorkle and received a text message from him confirming that prior Homeland employees believed Mr. Ruesch was his father-in-law.[47]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[49] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[50]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[51]

---

[45] Defendant Law Firms' Motion ¶ 37 at 11; Exh. 11 at 61-64.

[46] Defendant Law Firms' Motion ¶ 38 at 11; Exh. 13 at 152.

[47] Defendant Law Firms' Motion ¶ 39 at 11; Exh. 13 at 143.

[48] Fed. R. Civ. P. 56(a).

[49] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[50] *Id.*

[51] *Id.* at 670-71.

**DISCUSSION**

Plaintiffs have eight remaining causes of action against the Defendant Law Firms:
(1) abuse of process; (2) invasion of privacy; (3) trespass; (4) negligence; (5) intentional
infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligent hiring
and supervision; and (8) punitive damages. The Defendant Law Firms previously moved to
dismiss these claims based on the judicial proceedings and litigation privilege.[52] At oral
argument, the motion was denied to allow discovery seeking evidence of bad faith as an
exception to the judicial proceedings and litigation privilege.[53] Discovery was conducted, and the
parties have now briefed the issue. Based on the Undisputed Facts, the judicial proceedings and
litigation privilege applies. There are insufficient facts and evidence to suggest any bad faith on
the part of the Defendant Law Firms, as discussed below.

### The Judicial Proceedings and Litigation Privilege Bars Plaintiffs' Lawsuit Against the Defendant Law Firms in Its Entirety

Historically, in Utah, the judicial proceedings and litigation privilege "has been used to
immunize certain statements made during a judicial proceeding from defamation claims."[54] The
privilege "embraces the principle that an attorney acting within the law, in a legitimate effort to
zealously advance the interests of his client, shall be protected from civil claims arising due to
that zealous representation."[55]

---

[52] Motion to Dismiss Plaintiff's First Amended Complaint, docket no. 23, filed June 18, 2018.

[53] Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 38, filed August 9, 2018.

[54] *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 28, 285 P.3d 1157 (internal quotation marks omitted).

[55] *Id.* ¶ 35 (internal quotation marks omitted).

In 2012, the Utah Supreme Court extended the privilege to conduct, as well as statements occurring in the course of judicial proceedings.[56] In doing so, it "clarif[ied] the contours of the privilege as applied to attorneys, including what plaintiffs must plead to overcome it."[57] The Utah Supreme Court noted that "the privilege presumptively attaches to conduct and communications made by attorneys on behalf of their clients in the course of judicial proceedings."[58]

"When an attorney takes actions or makes statements in the course of judicial proceedings, it is presumed that an attorney who is acting or communicating in relation to his representation of a client is acting on behalf of that client and for that client's interests."[59] "Lawyers necessarily exercise a wide degree of discretion in performing their duties in the course of judicial proceedings, and must be free to pursue the best course charted for their clients without the distraction of a vindictive lawsuit looming on the horizon."[60] To hold otherwise "would invite attorneys to divide their interest between advocating for their client and protecting themselves from a retributive suit."[61] Such a result would force the attorney "constantly to balance his own potential exposure against his client's best interest."[62]

In this case, there is no question that the Defendant Law Firms were acting on behalf of their clients in the course of judicial proceedings. Plaintiffs' own Complaint alleges that the Defendant Law Firms never deviated from Purple Shovel's interests. For example, Plaintiffs

---

[56] *Id.*

[57] *Id.*

[58] *Id.* ¶ 36.

[59] *Id.* (internal quotation marks omitted).

[60] *Id.* (internal quotation marks omitted).

[61] *Id.* (internal quotation marks omitted).

[62] *Id.* ¶ 33 (internal quotation marks omitted).

allege that the Defendant Law Firms were "employed by Purple Shovel to collect on the judgment obtained against the Judgment Debtors."[63] They also allege that the Defendant Law Firms "on behalf of Purple Shovel . . . applied for and obtained a Writ of Execution."[64] By the Plaintiffs' own description, the complained-of actions of seeking and executing the Writ are actions taken by attorneys "in the course of judicial proceedings" who are "serving [the clients'] interests."[65] The Undisputed Fact confirm this. Therefore, the Defendant Law Firms are entitled to the presumption of the judicial proceedings and litigation privilege.

**There is No Evidence that the Defendant Law Firms Obtained the Writ in Bad Faith**

Having found that the presumption of the privilege applies, the next query is whether any exception to the privilege negates that presumption. The Utah Supreme Court has observed that the judicial proceedings and litigation privilege "is not without limits."[66] Specifically, the privilege does not apply where:

> An attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's . . . [or] has committed fraud or otherwise acted in bad faith, which is inherently 'acting in a manner foreign to his duties as an attorney.'[67]

In other words, if the attorney was acting outside the scope of the representation or in bad faith, the privilege does not apply.

Plaintiffs argue that the bad faith exception to the judicial proceedings and litigation privilege applies in this case because (1) the Defendant Law Firms purposefully sought a writ of

---

[63] Complaint ¶ 15.

[64] *Id.* ¶ 20.

[65] *Moss,* 2012 UT 42, ¶ 36.

[66] *Id.* ¶ 37.

[67] *Id.* (internal quotation marks omitted).

execution rather than a writ of garnishment; and (2) the Defendant Law Firms caused or allowed the Writ to be served by a constable without assistance from the U.S. Marshal's Service. Each argument will be addressed in turn.

First, Plaintiffs argue that the Defendant Law Firms acted in bad faith when they sought a writ that was not permitted under the law.[68] Specifically, Plaintiffs argue that the Defendant Law Firms should have obtained a writ of garnishment instead of a writ of execution and by failing to do so, they acted in bad faith.[69] Plaintiffs' argument lacks merit.

Plaintiffs have not pointed to any fact or evidence in the record to support their conclusory assertion that the Defendant Law Firms knew they were seeking the "wrong" writ.[70] Indeed, the Undisputed Facts point to the contrary. At the time the Writ was obtained, the Defendant Law Firms had a reasonable belief that (1) the Rueschies were the in-laws of McCorkle; and (2) the property that they were seeking to seize was still "under the control of" McCorkle because it was merely being stored by the Rueschies as an accommodation for him. Given that information, a writ of execution, which is used to seize property "under the control of" a judgment debtor, was both sought in good faith and was proper.[71]

Moreover, even if the Defendant Law Firms had sought the incorrect writ, Plaintiffs have still failed to show any indicia that the Defendant Law Firms did so in bad faith. There are no

---

[68] Plaintiffs' Motion at 6.

[69] *Id.* at 7-9.

[70] Complaint ¶ 74; Plaintiffs' Memorandum in Opposition to Steptoe & Johnson's, Strong & Hanni's, and Michael L. Ford's Joint Motion for Summary Judgment ("Plaintiffs' Opposition") at 31-32, docket no. 135, filed September 12, 2019.

[71] Utah R. Civ. P. 64E.

facts to support that the Defendant Law Firms were acting other than to serve their client's interests.[72] Plaintiffs' argument is wholly unsupported by the facts and evidence.

Secondly, Plaintiffs' argument that it was bad faith for the Defendant Law Firms to have Constable Houghtalen serve the Writ without the presence of the U.S. Marshals is similarly lacking merit. Plaintiffs erroneously equate proceeding without the assistance of the U.S. Marshal with lacking an "honest belief in the propriety of the activities . . . tak[ing] unconscionable advantage of others . . . or [acting to] hinder, delay or defraud others."[73] Again, there are no facts or evidence that the Defendant Law Firms' acted in bad faith. The failure of the U.S. Marshal's office to attend the execution of the Writ is at most a mistake, not bad faith. Plaintiffs have pointed to no facts or evidence that the Defendant Law Firms were acting with ill intent or bad faith in executing the Writ. Rather, the Undisputed Facts and evidence demonstrate that the Defendant Law Firms were motivated only by a desire and purpose to seize the judgment debtor assets in furtherance of their client's interests.

Plaintiffs had the opportunity to offer facts and evidence showing or leading to a reasonable inference that the Defendant Law Firms acted in bad faith or outside the scope of their representation of their client's interests. Plaintiffs have failed to do so. Therefore, the Defendant Law Firms are entitled to the judicial proceedings and litigation privilege. The

---

[72] Courts have routinely not made a finding of bad faith in cases where the alleged conduct of the attorney was more egregious than it is here. *Moss*, 2012 UT 42, ¶ 43, 285 P.3d 1157, 1168 (holding that "even if, as the complaint alleges, [the client] desired to misuse a legal process to cause an illegal raid on plaintiffs' home", the privilege applies); *Amarosa v. Dr. John's Inc.*, No. 2:11-CV-676 DN, 2014 WL 3015312, at *2-3 (D. Utah July 2, 2014) (holding that the judicial proceedings privilege applies where defendant knowingly made false statements "for the malicious purpose of preventing [plaintiff] from receiving her unemployment benefits").

[73] Plaintiffs' Motion at 10.

Defendant Law Firms are not liable on Plaintiffs' claims as a matter of law. Each of Plaintiffs' eight remaining claims can be dismissed on this point alone.[74]

### Plaintiffs Cannot Establish the Essential Elements of their Remaining Claims

Even if the judicial proceedings and litigation privilege does not serve as a bar to Plaintiffs' claims, the claims would still fail as a matter of law because Plaintiffs cannot satisfy at least one essential element of each cause of action.

**The Abuse of Process Claim**

"A claim for abuse of process requires the plaintiff to show (1) that the defendant used legal process, (2) to accomplish an improper purpose or purpose for which that process was not designed, (3) causing the plaintiff's harm."[75] Plaintiffs' abuse of process claim fails because the Defendant Law Firms did not act outside the scope of their representation and Plaintiffs suffered no cognizable damages.

First, regarding  the "improper purpose" element, "a party must allege both an ulterior purpose and a willful act in the use of the process not proper in the regular conduct of the proceeding."[76] "To satisfy the 'willful act' requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose."[77] "Use of legal process with a bad motive alone does not defeat that right; a corroborating act of a nature

---

[74] Plaintiffs rest their argument and interpretation of "bad faith" on the factors elucidated in *Baldwin v. Burton*, 850 P.2d 1188 (Utah 1993), a case discussing a statute that awards attorney fees where actions are not brought in good faith. Plaintiffs argue, without support or authority, that the analysis in *Baldwin* should be applied to the judicial proceedings privilege. Plaintiffs' invitation to create new factors in interpreting the judicial proceedings privilege under Utah law is declined. The *Baldwin* factors do not apply to the judicial proceedings and litigation privilege.

[75] *Moss*, 2012 UT 42, ¶ 37 n.6 (quoting *Mountain W. Surgical Ctr., L.L.C. v. Hosp. Corp. of Utah*, 2007 UT 92, ¶ 11, 173 P.3d 1276).

[76] *Hatch v. Davis*, 2006 UT 44, ¶ 36, 147 P.3d 383 (internal quotations marks omitted).

[77] *Id.* ¶ 39.

other than legal process is also necessary."[78] In other words, "[a]n attorney may also be liable for the tort[] of abuse of process . . . *but only if* the attorney acted outside the scope of representing his client or acted for his own interests."[79]

 Here, Plaintiffs have failed to demonstrate any facts that the Defendant Law Firms had any purpose for obtaining the Writ other than to collect on their client's judgment from qualifying assets believed to have been in Plaintiffs' possession. Plaintiffs have not pointed to any "corroborating act of a nature other than legal process" by the Defendant Law Firms, who took actions only in accordance with the legal process of obtaining a writ and serving it. Though the information the Defendant Law Firms relied upon ultimately proved incorrect – Plaintiffs did not possess any judgment debtor property – a mistake made in the course of lawfully using legal process does not lend itself to a claim for abuse of process. The Undisputed Facts demonstrate that the Defendant Law Firms were pursuing recovery for their client, Purple Shovel, using available legal processes. Because Plaintiffs cannot prove that the Defendant Law Firms acted outside of this scope of representation, or that they had any ulterior motive corroborated by conduct independent of the legal process, their claim for abuse of process fails.

 Second, Plaintiffs have suffered no cognizable damages and thus, their claim is also defeated for that reason. Plaintiffs have presented no evidence of physical harm, property damage, or bodily damage. Indeed, Plaintiffs' testimony was to the contrary. Mrs. Ruesch admitted in her deposition that the Constable neither touched her nor damaged property in the home.[80] She also testified that she has not received any medication, mental health counseling or

---

[78] *Id.* (internal quotation marks omitted).

[79] *Moss,* 2012 UT 42, ¶ 37 (emphasis added).

[80] *Supra* Undisputed Facts ¶ 25.

therapy as a result of the Writ.[81] Mr. Ruesch also admitted that he has not received medical

treatment, therapy, or taken any medication due to the Writ.[82] Plaintiffs have not pointed to any

cognizable damages and thus, Plaintiffs' abuse of process claim fails as a matter of law.

**The Invasion of Privacy Claim**

Under Utah law, a claim based on an intrusion upon seclusion requires the plaintiff to

prove: "(1) that there was an intentional substantial intrusion, physically or otherwise, upon the

solitude or seclusion of the complaining party, and (2) that the intrusion would be highly

offensive to the reasonable person."[83] While the determination of the offensive element "is

usually within the province of the jury, the trial court must make a threshold determination of

offensiveness in discerning the existence of a cause of action for intrusion."[84] In making this

threshold determination, "a court should consider such factors as the degree of intrusion, the

context, conduct and circumstances surrounding the intrusion as well as the intruder's motives

and objectives, the setting into which he intrudes, and the expectations of those whose privacy is

invaded."[85]

In this case, the Undisputed Facts and evidence demonstrate that the "context" of the

intrusion is the execution of a lawfully signed writ, by a professional and business-like constable,

who searched for approximately one hour and took nothing.[86] Mrs. Ruesch accompanied the

Constable at all times.[87] There are no facts or evidence that the Constable disrupted or destroyed

---

[81] *Id.* ¶ 29.

[82] *Id.* ¶ 30.

[83] *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (internal quotation marks omitted).

[84] *Id.* at 379 (internal quotation marks and citations omitted).

[85] *Id.*

[86] Defendant Law Firms' Motion ¶¶ 25-31 at 9-10; Exh. 11 at 34-36.

[87] Defendant Law Firms' Motion ¶ 27 at 9; Exh. 11 at 36.

Plaintiffs' property, or that he was even untidy in his search. He acted professionally while in Plaintiffs' home, harmed nothing, and did not take anything. Once the Constable realized that there was no judgment debtor property on the premises, he left. Even Mrs. Ruesch testified that while "gruff," the constable was nonetheless "professional" and businesslike."[88] Plaintiffs have failed to show that the Constable's motives and objectives were anything other than to safely enforce a court order authorizing him to enter Plaintiffs' home and search for any of the subject assets. And without such showing, Plaintiffs cannot legitimately contend that the entrance was "highly offensive."[89] The Undisputed Facts and evidence do not support a reasonable inference that the entrance was "highly offensive."

Plaintiffs argue that the intrusion is offensive because of the sanctity of the home, which courts, including the United States Supreme Court, have protected in the context of Fourth Amendment searches and seizures.[90] The entry is unusual and certainly unexpected in a private home, but not "highly offensive." This judgment enforcement does not rise to the level of being "highly offensive to the reasonable person," and, therefore, fails as a matter of law.

**The Trespass Claim**

Utah has "long recognized that in law every entry upon the soil of another, in the absence of lawful authority, without the owner's license, is a trespass."[91] Plaintiffs allege that the Defendant Law Firms "intentionally caused an unauthorized physical entry onto and into real

---

[88] Defendant Law Firms' Motion ¶¶ 28-31 at 9-10; Exh. 11 at 34-36.

[89] This conclusion is even more compelling when compared to those types of intrusions that are considered highly offensive: "installation of an electronic listening device in a tenant's bedroom; taking pictures and peeking through windows with binoculars; [and] unauthorized prying into the plaintiff's bank account." *Stien*, 944 P.2d 374, 378 (Utah Ct. App. 1997).

[90] Plaintiffs' Opposition at 31.

[91] *Purkey v. Roberts*, 2012 UT App 241, ¶ 18, 285 P.3d 1242, 1247 (internal quotations marks omitted).

property belonging to Plaintiffs."[92] They argue that because the Defendant Law Firms allegedly applied for the wrong type of writ, they lacked authority to enter Plaintiffs' property.[93]

Plaintiffs' argument misses the point. The tort of trespass is only actionable where there is entry without "lawful authority," and a writ of execution is "lawful authority." It is expressly authorized by the issuing court. The fact that the Defendant Law Firms might have applied for an incorrect writ, as Plaintiffs argue, does not invalidate the legitimacy of a lawfully signed order by the court. Plaintiffs cannot dispute that the Writ was issued by a court of law and authorized Constable Houghtalen to enter Plaintiffs' property, search the premises, and seize any debtor assets found there. As such, Plaintiffs' trespass claim fails as a matter of law.

**The Negligence Claim**

"The essential elements of a negligence action are: (1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff."[94] Plaintiffs' negligence claim fails because the Defendant Law Firms owed no duty to Plaintiffs and Plaintiffs suffered no cognizable damages, both required elements of their negligence claim.

First, "[a]n essential element of any negligence claim is a duty of reasonable care owed by the defendant to the plaintiff."[95] The existence of a duty is "purely a legal question."[96]

Utah law recognizes that attorneys owe a duty to their clients. Indeed, the Utah Supreme Court decreed that "the obligation of an attorney is to his client and not a third party."[97] After all,

---

[92] Complaint ¶ 74.

[93] Plaintiffs' Opposition at 31-32.

[94] *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 10, 264 P.3d 752 (internal quotation marks omitted).

[95] *C.C. v. Roadrunner Trucking, Inc.*, 823 F. Supp. 913, 922 (D. Utah 1993).

[96] *MacGregor v. Walker*, 2014 UT 2, ¶ 10, 322 P.3d 706.

[97] *Hughes v. Housley*, 599 P.2d 1250, 1253-54 (Utah 1979).

"the basis of our judicial system is the adversarial model, a concept which is foreign to the placement of a duty upon counsel to represent the best interests of both sides."[98] "Thus, an attorney will be held liable in negligence only to his or her client, and cannot, in the absence of special circumstances, be held liable to anyone else."[99] "The predominant inquiry in any third party beneficiary case is whether the contracting parties clearly intended the third party to receive a separate and distinct benefit from the contract."[100] This same inquiry is true "in the setting of attorney liability to non-clients."[101] Where there is no third-party relationship between the attorney and the non-client, there is no duty.[102]

Here, Plaintiffs do not have an attorney-client relationship with the Defendant Law Firms; are not intended third-party beneficiaries of the relationship between the Defendant Law Firms and Purple Shovel; and do not have any other relationship that remotely resembles privity. To the contrary, the Defendant Law Firms were directly adverse to Plaintiffs with respect to obtaining and serving the Writ. Plaintiffs have not and cannot show any duty flowing from the Defendant Law Firms to them and thus, their negligence fails as a matter of law.

Second, Plaintiffs have suffered no cognizable damages and thus, their claim is equally defeated. Under Utah law, damages are an element of negligence.[103] Emotional distress is only recoverable where it is proven "by means of severe physical or mental manifestations."[104] The Undisputed Facts and evidence demonstrate that such manifestations do not exist here.

---

[98] *Atkinson v. IHC Hospitals, Inc.*, 798 P.2d 733, 736 (Utah 1990).

[99] *Winters v. Schulman*, 1999 UT App 119, ¶ 25, 977 P.2d 1218.

[100] *Oxendine v. Overturf*, 1999 UT 4, ¶ 14, 973 P.2d 417.

[101] *Id*.

[102] *Winters*, 1999 UT App 119, ¶ 26, 977 P.2d at 1225 (finding no duty because the legal representation agreement with the defendant "was obviously not intended to benefit [plaintiff].").

[103] *Ladd*, 2011 UT App 355, ¶ 10, 264 P.3d 752, 755-56.

[104] *Carlton v. Brown*, 2014 UT 6, ¶ 57, 323 P.3d 571.

Plaintiffs put forward no evidence of physical harm, property damage, or any other cognizable harm. Mrs. Ruesch admitted in her deposition that the Constable did not physically touch her or damage any property in the home.[105] She also testified that she has not received any mental health counseling or therapy nor any type of medication as a result of the Writ.[106] When asked to "quantify the existence of any emotional distress" resulting from the Writ, she testified, "Just that it's still very upsetting to me. When I have to talk about it, I get upset again."[107]

Similarly, Mr. Ruesch, who was not home when the Writ was served, admitted that he has not received medical treatment, undergone any counseling, or taken any medication as a result of the Writ.[108]

In short, being "upset," without physical harm or property damage, while undesirable, is insufficient to allow for damages under a negligence cause of action. Plaintiffs' alleged damages are not cognizable and, therefore, fail as a matter of law.

Finally, even if Plaintiffs had satisfied the duty and damages elements, their negligence claim is nevertheless barred by the economic loss rule. That rule states that if there is no contract between the relevant parties, "recovery of economic losses [is barred] in negligence actions unless the plaintiff can show physical damage to other property or bodily injury."[109] "[T]he economic loss rule applies to prevent the imposition of 'economic expectations' on non-contracting parties."[110] Here, there is no contract between the Plaintiffs and the Defendant

---

[105] *Supra* Undisputed Facts ¶ 25.

[106] *Id.* ¶ 29.

[107] *Id.* ¶ 28.

[108] *Id.* ¶ 30.

[109] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (internal quotations omitted).

[110] *Fennell v. Green*, 2003 UT App 291, ¶ 15, 77 P.3d 339, 344, *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 15, 221 P.3d 234.

Law Firms, and Plaintiffs have conceded that they have no "physical damage to other property or bodily injury."[111] Therefore, the economic loss rule bars their claims for negligence.

**The Intentional Infliction of Emotional Distress Claim**

To state a claim for intentional infliction of emotional distress ("IIED"),

a plaintiff must plead facts that demonstrate that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.[112]

"[I]t is not enough for a plaintiff to merely allege emotional distress. Instead, [the plaintiff] must prove that distress by means of severe physical or mental manifestations."[113] Moreover, "[a]n allegation of improper . . . use of legal process against an individual is not redressable by a cause of action for intentional infliction of emotional distress."[114]

In the present case, Plaintiffs' IIED claim fails because Plaintiffs unequivocally testified that their distress from the Writ execution is limited to, at most, being "upset."[115] This is insufficient to show the "severe mental or physical symptoms" required for a claim of IIED.

Additionally, Plaintiffs' IIED claim against the Defendant Law Firms fails because it is based on allegations of improper use of legal process – a claim which is barred under Utah law.[116] Plaintiffs allege that the Defendant Law Firms arranged for and executed the Writ to

---

[111] *Supra* Undisputed Facts ¶¶ 29-30.

[112] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 58, 70 P.3d 17, 30 (internal quotation marks omitted).

[113] *Carlton*, 2014 UT 6, ¶ 57, 323 P.3d 571.

[114] *Bennett*, 2003 UT 9, ¶ 66.

[115] *Supra* Undisputed Facts ¶¶ 23-31.

[116] *Bennett*, 2003 UT 9, ¶ 66.

harass, oppress, and abuse Plaintiffs.[117] Even if there were facts and evidence to support such a

claim – which Plaintiffs have not presented – Plaintiffs cannot recover under a theory of IIED

because under Utah law, an IIED claim cannot be premised on allegations of an abuse of

process.[118] Therefore, Plaintiffs' IIED claim fails as a matter of law.

**The Negligent Infliction of Emotional Distress Claim**

Plaintiffs' claim for negligent infliction of emotional distress ("NIED") fails for many of

the same reasons that their claims for negligence and IIED fail. To prevail on a claim for NIED,

the plaintiff must show:

> If the actor unintentionally causes emotional distress to another, he is subject to
> liability to the other for resulting *illness or bodily harm* if the actor (a) should
> have realized that his conduct involved an unreasonable risk of causing the
> distress, otherwise than by knowledge of the harm or peril of a third person, and
> (b) from factors known to him, should have realized that the distress, if it were
> caused, might result in *illness or bodily harm*.[119]

In this case, as with Plaintiffs' claim for IIED, Plaintiffs have not presented any facts or

evidence demonstrating "illness or bodily harm" based on the execution of the Writ. Indeed,

Plaintiffs' testimony has been to the contrary. Other than being "upset", Plaintiffs have suffered

no physical or mental ailments as a result of the Writ.[120] As such, Plaintiffs cannot prove "illness

or bodily harm" and their IIED claim fails. Moreover, like their IIED claim, Plaintiffs' NIED

claim cannot be based on allegations of improper use of legal process.[121]

---

[117] Complaint ¶ 42.

[118] *Bennett*, 2003 UT 9, ¶ 66.

[119] *Carlton*, 2014 UT 6, ¶ 56 (emphasis added) (internal citation omitted).

[120] *Supra* Undisputed Facts ¶¶ 23-30.

[121] *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 61, 116 P.3d 323 ("Because [counterclaimants] have failed to allege any facts beyond [developer's] use, or abuse, of the legal process, they have failed to state a cause of action for the negligent infliction of emotional distress.").

Finally, like Plaintiffs' negligence claim, the NIED claim is barred by the economic loss rule, which bars economic recovery between non-contracting parties who have not suffered physical damage to other property or bodily injury.[122] The rule extends beyond pure negligence claims to tort claims that are negligence-based, including negligent infliction of emotional distress.[123] Here, where the Undisputed Facts and evidence show that Plaintiffs have not suffered any physical damage to property or bodily injury, the economic loss rule precludes recovery under a claim for NIED.

**The Negligent Hiring and Supervision Claim**

Plaintiffs have stipulated to the dismissal of their ninth cause of action – Negligent Hiring and Supervision – against Strong & Hanni and Steptoe.[124] Therefore, the claim will be dismissed.

**The Punitive Damages Claim**

In Utah, "punitive damages cannot be pleaded as an independent cause of action."[125] Rather, punitive damages "is an additional remedy for a violation of a legal duty giving rise to a cause of action based on that violation. There is no cause of action as such for punitive damages."[126] "Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded."[127] Here, because Plaintiffs' claims all fail as a matter of law, as discussed above, Plaintiffs' demand for punitive damages also fails.

---

[122] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (internal quotations omitted).

[123] *Brockbank v. JPMorgan Chase Bank*, No. 2:11-cv-00671-DAK, 2012 WL 1142933 at *5 (D. Utah April 4, 2012) (dismissing negligence-based claims, including negligent infliction of emotional distress, because economic loss rule prohibits negligence-based claims "absent physical property damage or bodily injury").

[124] Plaintiffs' Opposition at 38. Plaintiffs did not assert this claim against Ford.

[125] *Norman v. Arnold*, 2002 UT 81, ¶ 8 n.2, 57 P.3d 99.

[126] *DeBry v. Cascade Enterprises*, 879 P.2d 1353, 1359 (Utah 1994).

[127] Utah Code Ann. § 78B-8-201(1)(a).

## ORDER

IT IS HEREBY ORDERED that Plaintiffs' Motion[128] is DENIED and the Defendant

Law Firms' Motion[129] is GRANTED. Plaintiffs' claims against the Defendant Law Firms are

DISMISSED with prejudice.

Dated March 29, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[128] Docket no. 125, filed August 15, 2019.

[129] Docket no. 126, filed August 15, 2019.