IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DON L. RUESCH, an individual; and LONEVA R. RUESCH, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> PURPLE SHOVEL, LLC, a foreign limited liability company; STRONG & HANNI, P.C., a Utah Professional Corporation; MICHAEL L. FORD, an individual; STEPTOE & JOHNSON LLP, a foreign limited liability partnership; STATEWIDE COURT & ATTORNEY SERVICES LLC d/b/a UTAH CONSTABLE SERVICES, a Utah limited liability company; JAMES EDWARD HOUGHTALEN, an individual; CHRIS WORRELL, an individual; WENDY WORRELL, an individual; DAMIAN BATES, and DOE DEFENDANTS 1-6, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS CHRIS WORRELL, WENDY WORRELL, AND DAMIAN BATES'S JOINT MOTION FOR SUMMARY JUDGMENT** <br><br><br> Case No. 4:18-cv-00028-DN <br><br> District Judge David Nuffer |

This dispute arises out of the service and execution of a writ of execution on Plaintiffs at their home.[1] Defendants Strong & Hanni, P.C. ("Strong & Hanni"), Michael L. Ford ("Ford"), and Steptoe & Johnson LLP ("Steptoe") (collectively, "Defendant Law Firms") had obtained a nearly $10 million judgment against third parties, Homeland Munitions ("Homeland") and Bradley McCorkle ("McCorkle"), on behalf of their client, Purple Shovel, LLC ("Purple

---

[1] Second Amended Complaint and Jury Demand ("Complaint"), docket no. 89, filed February 4, 2019.

Shovel").[2] Having received credible information that Plaintiffs were related to McCorkle and were potentially hiding judgment debtor assets, the Defendant Law Firms obtained a writ of execution ("Writ").[3] Unfortunately, Plaintiffs were misidentified and had no tie to the judgment debtors or their assets.

Defendants Chris Worrell ("Mr. Worrell"), Wendy Worrell ("Mrs. Worrell"), and Damian Bates ("Mr. Bates") (collectively, the "Worrell/Bates Defendants"), worked for Purple Shovel through a staffing company, TeamOne. At Purple Shovel's instruction, the Worrell/Bates Defendants were asked to communicate with Purple Shovel's attorneys, the Defendant Law Firms. The Worrell/Bates Defendants did not have an interest in the judgment at issue; they were solely working with Purple Shovel's attorneys at Purple Shovel's request. While Plaintiffs admit they have not suffered any property damage, loss of property, or bodily injury, they nevertheless brought seven causes of action against the Worrell/Bates Defendants for their role in misidentifying Plaintiffs in the Writ.[4]

The Worrell/Bates Defendants seek summary judgment on Plaintiffs' claims ("Worrell/Bates Defendants' Motion").[5] They argue that the judicial proceedings and litigation privilege bars Plaintiffs' claims in their entirety.[6] The Worrell/Bates Defendants also argue that Plaintiffs cannot establish the essential elements of their claims.[7]

---

[2] Judgment Against Homeland Munitions, LLC, Birken Startree Holdings, Corp., Kilo Charlie, LLC, and LC Defense, LLC, ECF no. 49, in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed July 20, 2017.

[3] Application for Writ of Execution, ECF no. 95 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed October 3, 2017.

[4] Complaint ¶¶ 65-93, 99-101.

[5] Defendants Chris Worrell, Wendy Worrell, and Damian Bates' Joint Motion for Summary Judgment ("Worrell/Bates Defendants' Motion"), docket no. 129, filed August 15, 2019.

[6] *Id.*

[7] *Id.*

After considered the parties' briefs and relevant case law, the Worrell/Bates Defendants'

Motion is GRANTED. The judicial proceedings and litigation privilege protects the

Worrell/Bates Defendants from liability on Plaintiffs' claims. Plaintiffs have also failed to

present sufficient facts and evidence to establish the essential elements of their claims.

**Contents**

UNDISPUTED FACTS ................................................................................................................ 3
STANDARD OF REVIEW ........................................................................................................ 9
DISCUSSION ............................................................................................................................. 9
    The Judicial Proceedings and Litigation Privilege Bars Plaintiffs' Lawsuit Against the
        Worrell/Bates Defendants in Its Entirety ........................................................................ 10
        No Exception to the Judicial Proceedings and Litigation Privilege Applies ........ 12
    Plaintiffs Cannot Establish the Essential Elements of their Claims Against the
        Worrell/Bates Defendants ................................................................................................. 13
        The Abuse of Process Claim ............................................................................................. 13
        The Invasion of Privacy Claim ........................................................................................ 13
        The Trespass Claim ........................................................................................................... 15
        The Negligence Claim ...................................................................................................... 16
        The Intentional Infliction of Emotional Distress Claim ...................................... 18
        The Negligent Infliction of Emotional Distress Claim ........................................ 19
        The Punitive Damages Claim .......................................................................................... 20
ORDER ...................................................................................................................................... 21

## UNDISPUTED FACTS[8]

1.      In 2016, Purple Shovel, represented by Steptoe, prevailed on a claim for breach of

contract in an arbitration proceeding against Homeland and related entities (collectively,

"judgment debtors").[9]

---

[8] The following Undisputed Facts are taken from the parties' briefing. Those facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Facts are either disputed; not supported by the cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, these Undisputed Facts contain facts that are not material, but nevertheless provide a more complete background of the events and circumstances and give context to the parties' arguments.

[9] Memorandum Decision and Order, ECF no. 48 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed July 12, 2017; Judgment Against Homeland Munitions, LLC, Birken Startree Holdings, Corp., Kilo Charlie, LLC, and LC Defense, LLC ("Judgment"), ECF no. 49 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed July 20, 2017.

2.      On or around April 2017, Purple Shovel, through its lead counsel, Steptoe, retained Strong & Hanni and Ford to assist it in converting the arbitration award to a judgment and in collecting on the judgment against the judgment debtors.[10]

3.      On July 20, 2017, Purple Shovel, through the Defendant Law Firms, obtained a judgment against the judgment debtors in the amount of $9,986,909.92 plus post-judgment interest.[11]

4.      At the time Purple Shovel was seeking to collect on the judgment, it was concerned that the judgment debtors and McCorkle were actively transferring and concealing assets that should have been available to apply toward the judgment.[12]

5.      Specifically, Steptoe learned that McCorkle had engaged in a pattern of moving assets between illegitimate businesses and bank accounts and using family members to hide assets.[13]

6.      The court in the underlying judgment action entered an order finding that Homeland had violated the court's prior order "prohibiting the transfer of" assets.[14]

7.      On September 14, 2017, as part of Purple Shovel's efforts to locate Homeland assets, Ford deposed McCorkle's father, Mark McCorkle, who admitted he had received a total of $40,000 as a personal loan payment from McCorkle through Homeland business accounts.[15]

---

[10] Worrell/Bates Defendants' Motion ¶ 8 at 6.

[11] *Id*. ¶ 7 at 5; Judgment.

[12] Worrell/Bates Defendants' Motion ¶ 10 at 6; Purple Shovel, LLC's Ex Parte Motion for Prejudgment Writ of Attachment and Garnishment ("Motion for Prejudgment Writ"), ECF no. 26 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed June 5, 2017.

[13] Worrell/Bates Defendants' Motion ¶ 10 at 6.

[14] Prejudgment Writ of Attachment, ECF no. 38 in *Homeland Munitions et al. v. Purple Shovel*, Case No. 2:17-cv-00207-DB (D. Utah), filed June 21, 2017.

[15] Worrell/Bates Defendants' Motion ¶ 9 at 6.

8.     In an attempt to recover on the judgment, Dorothy Brown ("Brown"), an associate attorney at Steptoe, spoke to many former Homeland contacts, clients, and employees to obtain information about where McCorkle might be hiding judgment debtor assets.[16]

9.     During this time period, the Worrell/Bates Defendants were employed by a temporary staffing agency, TeamOne, and assigned to work for Purple Shovel.[17]

10.    While working for Purple Shovel, Mr. Worrell handled written proposals and the execution of contracts.[18]

11.    While working for Purple Shovel, Mrs. Worrell performed a secretarial role.[19]

12.    While working for Purple Shovel, Mr. Bates was employed as a program manager.[20]

13.    While working for Purple Shovel, the Worrell/Bates Defendants only acted in Purple Shovel's interests; they did not have any external motivation to execute a writ of execution or otherwise collect on any judgment entered in favor of Purple Shovel.[21]

14.    Steptoe communicated with Mr. Worrell regarding the judgment and its collection efforts.[22]

15.    Mr. Worrell looked at publicly available social media pages and performed a brief Google search that identified a certain business related to the name Ruesch in the St. George

---

[16] *Id.* ¶ 11 at 6.

[17] *Id.* ¶ 4 at 5.

[18] *Id.* ¶ 1 at 5.

[19] *Id.* ¶ 2 at 5.

[20] *Id.* ¶ 3 at 5.

[21] *Id.* ¶ 6 at 5.

[22] *Id.* ¶ 15 at 7.

area. Mr. Worrell relayed that information, including the fact that Ruesch Machine is located near Homeland's offices, to Brown at Steptoe.[23]

16.    Based on the representations from and research by Brown, Strong & Hanni obtained a Writ to execute on any of the judgment debtors' property at the Ruesch home.[24]

17.    On the morning of October 5, 2017, Constable James Edward Houghtalen ("Constable Houghtalen") served the Writ on Plaintiffs' residence.[25]

18.    After the Constable Houghtalen rang the doorbell and spoke with Plaintiff Loneva Ruesch ("Mrs. Ruesch"), he waited on the porch while Mrs. Ruesch went back into the house and called her husband, Plaintiff Don Ruesch ("Mr. Ruesch"), who was away on business. Mr. Ruesch called his neighbors and the local sheriff, all who arrived at the Ruesch's home before the Writ was executed.[26]

19.    As Purple Shovel representatives, and at the Defendant Law Firms' instruction, Mr. Worrell and Mr. Bates contacted and coordinated with Constable Houghtalen down the street from Plaintiffs' home.[27]

---

[23] *Id.* ¶ 17 at 7-8.

[24] *Id.* ¶ 19 at 8.

[25] Memorandum in Opposition to Defendants Chris Worrell, Wendy Worrell, and Damian Bates' Joint Motion for Summary Judgment ("Plaintiffs' Opposition") ¶ 9 at 14, docket no. 134, filed September 12, 2019.

[26] Worrell and Bates' Reply in Support of Their Motion for Summary Judgment ("Worrell/Bates Defendants' Reply") at 9, docket no. 152, filed October 16, 2019. This fact was not disputed by Plaintiffs in motions for summary judgment involving other Defendants. Memorandum Decision and Order (1) Denying Plaintiffs' Motion for Partial Summary Judgment as to Strong & Hanni, P.C., Michael L. Ford, and Steptoe & Johnson, LLP and (2) Granting Defendant Steptoe & Johnson, LLP's, Strong & Hanni, P.C.'s, and Michael L. Ford's Joint Motion for Summary Judgment ("Memorandum Decision and Order on Motions re Defendant Law Firms") ¶ 22 at 7, docket no. 159, filed Mar. 29, 2021; Memorandum Decision and Order (1) Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment as to Statewide Court & Attorney Services LLC d/b/a Utah Constable Services and James Edward Houghtalen and (2) Granting in Part, Denying in Part, and Reserving in Part Defendant Statewide Court & Attorney Services LLC d.b.a Utah Constable Services's and James Edward Houghtalen's Motion for Summary Judgment ("Memorandum Decision and Order on Motions re Constable Defendants") ¶ 8 at 5, docket no. 160, filed Mar. 30, 2021.

[27] Worrell/Bates Defendants' Motion ¶ 26 at 9.

20.     As Purple Shovel representatives, and at the request of the Defendant Law Firms, Mr. Worrell and Mr. Bates remained nearly a mile away from Plaintiffs' property during execution of the Writ. Mr. Worrell and Mr. Bates were in the vicinity to help identify potential assets belonging to one or more of the judgment debtors, should the need arise.[28]

21.     Neither Mr. Worrell nor Mr. Bates ever set foot on Plaintiffs' property and they never communicated with or interacted with Plaintiffs in any way.[29]

22.     At all times, Constable Houghtalen was accompanied and observed by Mrs. Ruesch.[30]

23.     Constable Houghtalen did not disrupt, harm, or take any of Plaintiffs' property.[31]

24.     Although Mrs. Ruesch "wasn't happy" and "was very disappointed and very angry" about an armed man searching her home for one hour, she never indicated that Constable Houghtalen's search of her residence was rude, offensive, messy, or otherwise unprofessional.[32] At most, Constable Houghtalen stated to her: "I'm executing the Writ, I'm coming in, and I'm doing the search."[33]

25.     Mr. Ruesch was not home when the search occurred.[34]

---

[28] *Id*. ¶ 27 at 9.

[29] *Id*. ¶ 28 at 9.

[30] Worrell/Bates Defendants' Reply at 9. This fact was not disputed by Plaintiffs in motions for summary judgment involving other Defendants. Memorandum Decision and Order on Motions re Defendant Law Firms ¶ 23 at 7; Memorandum Decision and Order on Motions re Constable Defendants ¶ 9 at 5.

[31] Worrell/Bates Defendants' Reply at 10. This fact was not disputed by Plaintiffs in motions for summary judgment involving other Defendants. Memorandum Decision and Order on Motions re Defendant Law Firms ¶¶ 24-26 at 7; Memorandum Decision and Order on Motions re Constable Defendants ¶¶ 10-12 at 5-6.

[32] Worrell/Bates Defendants' Motion ¶ 34 at 10.

[33] Plaintiffs' Opposition at 9.

[34] Worrell/Bates Defendants' Motion ¶ 35 at 11; Plaintiffs' Opposition at ¶ 14 at 15.

26.     From the time Constable Houghtalen left until Mr. Ruesch was able to get home, Mrs. Ruesch "[p]retty much fidgeted. That's all."[35] When Mr. Ruesch got home, Mrs. Ruesch testified that she "pretty much cried and he had to hold me while I cried."[36] Mrs. Ruesch continues to lose sleep because she wakes up and replays the execution event in her mind.[37]

27.     Mrs. Ruesch never sought treatment for physical or emotional distress or other injuries as result of this incident.[38]

28.     Mr. Ruesch was angry about the incident but was not otherwise physically harmed. He never sought treatment for his anger or any emotional suffering.[39] Mr. Ruesch also loses sleep as a result of the execution of the Writ.[40]

29.     As a result of the execution of the Writ, Mrs. Ruesch was angry at and distrustful of Mr. Ruesch,[41] which was painful for Mr. Ruesch.[42] However, Mrs. Ruesch testified that the Writ did not cause her to question her husband and that it did not harm her marriage relationship, or any relationship with friends or family.[43]

---

[35] Plaintiffs' Opposition ¶ 28 at 17.

[36] *Id*.

[37] *Id*. ¶ 37 at 18.

[38] Worrell/Bates Defendants' Motion ¶ 37 at 11.

[39] *Id*. ¶ 39 at 11.

[40] Plaintiffs' Opposition ¶ 38 at 18.

[41] *Id*. ¶ 35 at 18.

[42] *Id*. ¶ 36 at 18.

[43] Worrell/Bates Defendants' Reply at 10-11 (citing Mrs. Ruesch Deposition at 44:4-16, Exh J; Mr. Ruesch Deposition at 40, Exh A).

30.     Mr. Ruesch did not have to shut down his business or turn away any identifiable and quantifiable work due to the anticipation of a writ being executed on his business.[44]

31.     No property was damaged or taken from the Ruesch home.[45]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[47] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[48]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[49]

## DISCUSSION

Plaintiffs assert seven causes of action against the Worrell/Bates Defendants: (1) abuse of process; (2) invasion of privacy; (3) trespass; (4) negligence; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) punitive damages.[50] Based on the Undisputed Facts, the judicial proceedings and litigation privilege applies to the Worrell/Bates Defendants and is a complete bar to Plaintiffs' claims against the them.

---

[44] Worrell/Bates Defendants' Motion ¶ 36 at 11. In their Opposition, Plaintiffs alleged for the first time that Mr. Ruesch spent $1,500 to be represented by counsel at a hearing in Salt Lake City regarding a different writ for his business. Plaintiffs' Opposition at 12. Plaintiffs did not allege the $1,500 damages expense in their Complaint. Plaintiffs' Complaint addresses the execution of the Writ at Plaintiffs' home; the $1500 expense has no bearing in this case.

[45] Worrell/Bates Defendants' Motion ¶ 38 at 11.

[46] Fed. R. Civ. P. 56(a).

[47] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[48] *Id.*

[49] *Id.* at 670-71.

[50] Complaint ¶¶ 65-93, 99-101.

Additionally, Plaintiffs have failed to establish at least one essential element of each of their seven claims against the Worrell/Bates Defendants.

### The Judicial Proceedings and Litigation Privilege Bars Plaintiffs' Lawsuit Against the Worrell/Bates Defendants in Its Entirety

Historically, in Utah, the judicial proceedings and litigation privilege "has been used to immunize certain statements made during a judicial proceeding from defamation claims."[51] The privilege "is intended to promote the integrity of the adjudicatory proceeding and its truth finding processes."[52] Specifically, the privilege "protects participants in the judicial process from liability for statements made during an official proceeding."[53]

In 2012, the Utah Supreme Court extended the privilege to conduct, as well as statements occurring in the course of judicial proceedings.[54] The Utah Supreme Court also held "that the judicial proceedings [and litigation] privilege applies to all participants in the judicial process."[55] Those participants include "judges, jurors, witnesses, litigants, and counsel in judicial proceedings" because "the judicial system requires that there be free and open expression by *all participants*."[56] "[T]he privilege presumptively attaches to conduct and communications made . . . in the course of judicial proceedings."[57]

In this case, there is no question that Purple Shovel was a litigant in the underlying lawsuit or that the Defendant Law Firms were acting on behalf of Purple Shovel in the court of

---

[51] *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 28, 285 P.3d 1157 (internal quotation marks omitted).

[52] *Id.* ¶ 30 (internal citation and quotation marks omitted).

[53] *Peterson v. XPO Logistics, Inc.*, 812 Fed. App'x 754, 756 (2020).

[54] *Moss*, 2012 UT 42, ¶ 35.

[55] *Peterson*, 812 Fed. App'x at 758.

[56] *Allen v. Ortez*, 802 P.2d 1307, 1311 (Utah 1990) (emphasis added) (internal citation and quotation marks omitted).

[57] *Moss*, 2012 UT 42, ¶ 36.

the judicial proceedings. Plaintiffs' Complaint alleges that "Purple Shovel obtained a judgment . . . against various defendants."[58] Plaintiffs further allege that the Defendant Law Firms were "employed by Purple Shovel to collect on the judgment obtained against the Judgment Debtors."[59] As such, the judicial proceedings and litigation privilege applies to the Defendant Law Firms in their conduct relating to the Writ,[60] and Purple Shovel qualifies as a litigant under the privilege.[61]

The Worrell/Bates Defendants, who are undisputedly employees of Purple Shovel, are also protected by the privilege. Plaintiffs' Complaint states as much: "Purple Shovel is vicariously liable for conduct of . . . Defendants Chris Worrell, Wendy Worrell, and Damian Bates . . . under the doctrine of *respondeat superior*."[62] By Plaintiffs' own description, the complained-of actions of the Worrell/Bates Defendants are those of Purple Shovel, who is unquestionably a litigant in the underlying judicial proceeding. Indeed, Plaintiffs concede that the Worrell/Bates Defendants acted to further a judicial proceeding: "Chris Worrell, Wendy Worrell, and Damian Bates all provided information on which Steptoe relied in preparing and submitting the Applications for Writs of Execution against Don Ruesch and Ruesch Machine."[63]

---

[58] Complaint ¶ 14.

[59] *Id*. ¶ 15.

[60] Memorandum Decision and Order on Motions re Defendant Law Firms at 10-12.

[61] Courts in other jurisdictions have similarly determined that conduct outside the courtroom is protected by the judicial proceedings and litigation privilege when such conduct is permitted by law to achieve the objects of the litigation or has some relation to the judicial proceedings. *Osborne v. Coster*, 2015 WL 4930639, at *8 (W.D. Wash. August 18, 2015) (concluding that defendants' entry on the plaintiff's property pursuant to a court-issued writ of execution was privileged, thus, barring the plaintiff's trespass claim); *Bond v. Pecaut*, 561 F. Supp. 1037, 1038-39 (N.D. Ill, 1983) (concluding that the privilege applied to a witness letter regarding a divorce proceeding that sent to the judge); *Mallard v. Progressive Choice Ins. Co.*, 115 Cal.Rptr.3d 487, 496-97 (Cal. Ct. App. 4th Dist. 2010) (holding that the privilege applied to defendants' conduct of seeking discovery of the plaintiff's mental health records by subpoenaing third party health care providers in preparation of a defense against the plaintiff's uninsured motorist claim).

[62] Complaint ¶ 51.

[63] Plaintiffs' Opposition at 13.

Because the Undisputed Facts establish that the Worrell/Bates Defendants were employees of and acting on behalf of Purple Shovel, who is unquestioningly a litigant in a judicial proceeding, the Worrell/Bates Defendants are entitled to the presumption of the judicial proceedings and litigation privilege.

**No Exception to the Judicial Proceedings and Litigation Privilege Applies**

Having found that the presumption of the privilege applies, the next query is whether any exception to the privilege negates that presumption. The Utah Supreme Court has observed that the judicial proceedings and litigation privilege "is not without limits."[64] Specifically, the privilege does not apply where:

> An attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's . . . [or] has committed fraud or otherwise acted in bad faith, which is inherently 'acting in a manner foreign to his duties as an attorney.'[65]

In other words, if the attorney was acting outside the scope of the representation or in bad faith, the privilege does not apply. These exceptions apply to all participants in the judicial process, not just to attorneys.[66]

Plaintiffs have not argued that an exception to the privilege applies to the Worrell/Bates Defendants' conduct. And there are no facts or evidence in the record capable of reasonably supporting such a finding. Therefore, the Worrell/Bates Defendants are entitled to the judicial proceedings and litigation privilege and are not liable on Plaintiffs' claims as a matter of law. Each of Plaintiffs' claims against the Worrell/Bates Defendants can be dismissed on this point alone.

---

[64] *Moss*, 2012 UT 42, ¶ 37.

[65] *Id*. (internal quotation marks omitted).

[66] *Peterson v. XPO Logistics, Inc.*, 812 Fed. App'x 754, 759 (2020).

**Plaintiffs Cannot Establish the Essential Elements of their Claims
Against the Worrell/Bates Defendants**

Even if the judicial proceedings and litigation privilege does not serve as a bar to Plaintiffs' claims, the claims would still fail as a matter of law because Plaintiffs cannot satisfy at least one essential element of each cause of action.

**The Abuse of Process Claim**

Plaintiffs have stipulated to the dismissal of their claim for abuse of process against the Worrell/Bates Defendants.[67] Therefore, the claim will be dismissed.

**The Invasion of Privacy Claim**

Under Utah law, a claim based on an intrusion upon seclusion requires the plaintiff to prove: "(1) that there was an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party, and (2) that the intrusion would be highly offensive to the reasonable person."[68] While the determination of the offensive element "is usually within the province of the jury, the trial court must make a threshold determination of offensiveness in discerning the existence of a cause of action for intrusion."[69] In making this threshold determination, "a court should consider such factors as the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."[70]

---

[67] Plaintiffs' Opposition at 2, 25.

[68] *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (internal quotation marks omitted).

[69] *Id.* at 379 (internal quotation marks and citations omitted).

[70] *Id.*

In this case, the Undisputed Facts and evidence demonstrate that the only involvement of the Worrell/Bates Defendants was internet research before the Defendant Law Firms obtained the Writ, and then being approximately a mile away from Plaintiffs' residence when the Writ was served and executed. The Worrell/Bates Defendants never set foot on Plaintiffs' property and they never communicated or interacted with Plaintiffs in any way. Plaintiffs have failed to show that the Worrell/Bates Defendants' motives and objectives were anything other than to perform their jobs as employees of Purple Shovel, including being available to identify any judgment debtor assets if necessary. The Undisputed Facts and evidence do not support a reasonable inference that the Worrell/Bates Defendants' conduct was "highly offensive."

Additionally, the Undisputed Facts and evidence demonstrate that the "context" of the intrusion is the execution of a lawfully signed writ, by a professional and business-like constable, who searched for approximately one hour and took nothing.[71] There are no facts or evidence that Constable Houghtalen disrupted or destroyed Plaintiffs' property, or that he was even untidy in his search. He acted professionally while in Plaintiffs' home, harmed nothing, and did not take anything.[72] Plaintiffs have failed to show that Constable Houghtalen's motives and objectives were anything other than to safely enforce a court order authorizing him to enter Plaintiffs' home and search for any of the subject assets. And without such showing, Plaintiffs cannot legitimately contend that the entrance was "highly offensive."[73] The Undisputed Facts and evidence do not support a reasonable inference that the entrance was "highly offensive."

---

[71] *Supra* Undisputed Facts ¶¶ 17-24.

[72] *Id*. ¶ 23.

[73] This conclusion is even more compelling when compared to those types of intrusions that are considered highly offensive: "installation of an electronic listening device in a tenant's bedroom; taking pictures and peeking through windows with binoculars; [and] unauthorized prying into the plaintiff's bank account." *Stien*, 944 P.2d 374, 378 (Utah Ct. App. 1997).

Plaintiffs argue that the intrusion is offensive because of the sanctity of the home, which courts, including the United States Supreme Court, have protected in the context of Fourth Amendment searches and seizures.[74] The entry is unusual and certainly unexpected in a private home, but not "highly offensive." This judgment enforcement does not rise to the level of being "highly offensive to the reasonable person," and, therefore, fails as a matter of law.

**The Trespass Claim**

Utah has "long recognized that in law every entry upon the soil of another, in the absence of lawful authority, without the owner's license, is a trespass."[75] Plaintiffs argue that the Worrell/Bates Defendants are liable for trespass because "they caused others to trespass onto the Plaintiffs' property."[76] Specifically, Plaintiffs argue that by providing incorrect information to the Defendant Law Firms, which the Defendant Law Firms relied on to obtain the Writ, the Worrell/Bates Defendants caused an incorrect Writ to be executed.[77] That execution, Plaintiffs reason, caused Constable Houghtalen to trespass on Plaintiffs' property and therefore, the Worrell/Bates Defendants are liable for trespass.[78]

Plaintiffs' argument misses the point. The tort of trespass is only actionable where there is entry without "lawful authority," and a writ of execution is "lawful authority." It is expressly authorized by the issuing court. The fact that the Defendant Law Firms might have applied for an incorrect writ, as Plaintiffs argue, does not invalidate the legitimacy of a lawfully signed order by the court. Plaintiffs cannot dispute that the Writ was issued by a court of law and authorized

---

[74] Plaintiffs' Opposition at 31.

[75] *Purkey v. Roberts*, 2012 UT App 241, ¶ 18, 285 P.3d 1242, 1247 (internal quotations marks omitted).

[76] Plaintiffs' Opposition at 24-25.

[77] *Id*.

[78] *Id*.

Constable Houghtalen to enter Plaintiffs' property, search the premises, and seize any debtor assets found there. It is also undisputed that the Worrell/Bates Defendants never set foot on Plaintiffs' property and they never communicated or interacted with Plaintiffs in any way. As such, Plaintiffs' trespass claim fails as a matter of law.

**The Negligence Claim**

"The essential elements of a negligence action are: (1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff."[79] Plaintiffs' negligence claim fails because Plaintiffs suffered no cognizable damages and the economic loss rule bars any recovery.

First, the Undisputed Facts and evidence establish that Plaintiffs have suffered no cognizable damages and thus, their claim is defeated. Under Utah law, damages are an essential element of negligence.[80] Emotional distress is only recoverable where it is proven "by means of severe physical or mental manifestations."[81] The Undisputed Facts and evidence demonstrate that such manifestations do not exist here.

Plaintiffs put forward no evidence of physical harm, property damage, or any other cognizable harm. Mrs. Ruesch admitted in her deposition that Constable Houghtalen did not physically touch her or damage any property in the home.[82] She also testified that she has not received any mental health counseling or therapy nor any type of medication as a result of the

---

[79] *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 10, 264 P.3d 752 (internal quotation marks omitted).

[80] *Id*.

[81] *Carlton v. Brown*, 2014 UT 6, ¶ 57, 323 P.3d 571.

[82] *Supra* Undisputed Facts ¶ 23.

Writ.[83] When Mr. Ruesch came home, Mrs. Ruesch testified that she "pretty much cried and he had to hold me while I cried."[84]

Similarly, Mr. Ruesch, who was not home when the Writ was served, admitted that he has not received medical treatment, undergone any counseling, or taken any medication as a result of the Writ.[85]

In short, being upset or angry, without physical harm or property damage, while undesirable, is insufficient to allow for damages under a negligence cause of action. Plaintiffs' alleged damages are not cognizable and, therefore, fail as a matter of law.

Second, even if Plaintiffs had satisfied the damages element, their negligence claim is nevertheless barred by the economic loss rule. That rule states that if there is no contract between the relevant parties, "recovery of economic losses [is barred] in negligence actions unless the plaintiff can show physical damage to other property or bodily injury."[86] "[T]he economic loss rule applies to prevent the imposition of 'economic expectations' on non-contracting parties."[87] Here, there is no contract between the Plaintiffs and the Worrell/Bates Defendants, and Plaintiffs have conceded that they have no physical damage to other property or bodily injury.[88] Therefore, the economic loss rule bars their claims for negligence.

---

[83] *Id.* ¶ 27.

[84] *Id.* ¶ 26.

[85] *Id.* ¶ 28.

[86] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (internal quotations omitted).

[87] *Fennell v. Green*, 2003 UT App 291, ¶ 15, 77 P.3d 339, 344, *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 15, 221 P.3d 234.

[88] *Supra* Undisputed Facts ¶¶ 27-28, 31.

**The Intentional Infliction of Emotional Distress Claim**

To state a claim for intentional infliction of emotional distress ("IIED"),

a plaintiff must plead facts that demonstrate that the defendant intentionally
engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting
emotional distress, or, (b) where any reasonable person would have known that
such would result; *and* his actions are of such a nature as to be considered
outrageous and intolerable in that they offend against the generally accepted
standards of decency and morality.[89]

"[I]t is not enough for a plaintiff to merely allege emotional distress. Instead, [the

plaintiff] must prove that distress by means of severe physical or mental manifestations."[90]

In the present case, Plaintiffs' IIED claim fails because Plaintiffs unequivocally testified

that their distress from the Writ execution is limited to, at most, being upset and angry.[91] This is

insufficient to show the "severe mental or physical symptoms" required for a claim of IIED.

Additionally, the Undisputed Facts and evidence demonstrate that the only involvement

of the Worrell/Bates Defendants was internet research before the Defendant Law Firms obtained

the Writ, and then being approximately a mile away from Plaintiffs' residence when the Writ

was served and executed. The Worrell/Bates Defendants never set foot on Plaintiffs' property

and they never communicated or interacted with Plaintiffs in any way. No reasonable trier of fact

could find that this was conduct with a purpose of inflicting emotional distress; that a reasonable

person would have known that emotional distress would result; or that the Worrell/Defendants'

conduct was outrageous and intolerable.

Therefore, Plaintiffs' IIED claim against the Worrell/Bates Defendants fails as a matter

of law.

---

[89] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 58, 70 P.3d 17, 30 (internal quotation marks omitted).

[90] *Carlton*, 2014 UT 6, ¶ 57, 323 P.3d 571.

[91] *Supra* Undisputed Facts ¶¶ 24-31.

**The Negligent Infliction of Emotional Distress Claim**

Plaintiffs' claim for negligent infliction of emotional distress ("NIED") fails for the same reason that their claims for negligence and IIED fail. To prevail on a claim for NIED, the plaintiff must show the following:

> If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting *illness or bodily harm* if the actor (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and (b) from factors known to him, should have realized that the distress, if it were caused, might result in *illness or bodily harm*.[92]

In this case, as with Plaintiffs' claim for IIED, Plaintiffs have not presented any facts or evidence demonstrating "illness or bodily harm" based on the execution of the Writ. Indeed, Plaintiffs' testimony has been to the contrary. Other than being upset or angry, Plaintiffs have suffered no physical or mental ailments as a result of the Writ.[93] As such, Plaintiffs cannot prove "illness or bodily harm" and their IIED claim fails.

Additionally, the Undisputed Facts and evidence demonstrate that the only involvement of the Worrell/Bates Defendants was internet research before the Defendant Law Firms obtained the Writ, and then being approximately a mile away from Plaintiffs' residence when the Writ was served and executed. The Worrell/Bates Defendants never set foot on Plaintiffs' property and they never communicated or interacted with Plaintiffs in any way. No reasonable trier of fact could find that the Worrell/Bates Defendants should have realized their conduct involved an unreasonable risk of causing the distress, or that if it distress was caused, such distress might result in illness or bodily harm.

---

[92] *Carlton*, 2014 UT 6, ¶ 56 (emphasis added) (internal citation omitted).

[93] *Supra* Undisputed Facts ¶¶ 24-31.

Moreover, like Plaintiffs' negligence claim, the NIED claim is barred by the economic loss rule, which bars economic recovery between non-contracting parties who have not suffered physical damage to other property or bodily injury.[94] The rule extends beyond pure negligence claims to tort claims that are negligence-based, including negligent infliction of emotional distress.[95] Here, where the Undisputed Facts and evidence show that Plaintiffs have not suffered any physical damage to property or bodily injury, the economic loss rule precludes recovery under a claim for NIED.

Therefore, Plaintiffs' NIED claim fails as a matter of law.

**The Punitive Damages Claim**

In Utah, "punitive damages cannot be pleaded as an independent cause of action."[96] Rather, punitive damages "is an additional remedy for a violation of a legal duty giving rise to a cause of action based on that violation. There is no cause of action as such for punitive damages."[97] "Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded."[98] Here, because Plaintiffs' claims all fail as a matter of law, as discussed above, Plaintiffs' demand for punitive damages also fails.

---

[94] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (internal quotations omitted).

[95] *Brockbank v. JPMorgan Chase Bank*, 2012 WL 1142933 at *5 (D. Utah April 4, 2012) (dismissing negligence-based claims, including negligent infliction of emotional distress, because economic loss rule prohibits negligence-based claims "absent physical property damage or bodily injury").

[96] *Norman v. Arnold*, 2002 UT 81, ¶ 8 n.2, 57 P.3d 91.

[97] *DeBry v. Cascade Enterprises*, 879 P.2d 1353, 1359 (Utah 1994).

[98] Utah Code Ann. § 78B-8-201(1)(a).

## ORDER

IT IS HEREBY ORDERED that the Worrell/Bates Defendants' Motion[99] is GRANTED.

Plaintiffs' claims against the Worrell/Bates Defendants are DISMISSED with prejudice.

Dated March 30, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[99] Docket no. 129, filed August 15, 2019.